IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK06-41813 |
| | ) | |
| JAMES DANIEL SCHILKE, | ) | CH. 12 |
| | ) | |
| Debtor. | ) | |

## **MEMORANDUM**

      This matter was presented to the Court on Confirmation of Debtor's Chapter 12 Plan (Fil. #13), and an Objection to Confirmation of Plan filed by the United States of America/Internal Revenue Service (Fil. #19). A Stipulation of Facts was submitted by the parties (Fil. #29). James R. Nisley appeared for Debtor, and Henry N. Carriger appeared for the United States/Internal Revenue Service ("IRS"). This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L).

### *Background*

      This case presents the question of whether 11 U.S.C § 1222(a)(2)(A) authorizes Debtor to treat taxes resulting from the post-petition sale of real estate and other farm assets used in Debtor's farming operation as an unsecured claim without priority. As discussed below, I find that the Debtor may do so.

      The underlying facts of this case are not in dispute. Debtor filed this Chapter 12 proceeding on December 27, 2006. As part of his proposed Chapter 12 plan, Debtor is selling certain assets (real estate and breeding livestock) used in his farming operation. Debtor estimates that his taxable income for tax year 2007 from the sale of such assets will be $175,000.00, and his estimated capital gains taxes as a result of such sales will be $33,108.00.

      In his plan, Debtor provides for the taxes as follows:

> CLASS V: INTERNAL REVENUE SERVICE and NEBRASKA DEPARTMENT OF REVENUE: Any income tax resulting from the sale of real estate and livestock as provided in this Plan or any amendments or modifications shall be treated as an unsecured debt without priority under 11 USC §507 as provided in 11 USC §1222 (2) (A)[sic].

### *Discussion*

      11 U.S.C § 1222(a)(2)(A) was added by the 2005 bankruptcy amendments and provides as follows:

> (a)    The plan shall –

> . . . (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless –
>
>> (A) the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated in such manner only if the debtor receives a discharge . . . .

The parties have agreed in the stipulation that Debtor's proposed sales of real estate and breeding livestock are sales of farm assets used in Debtor's farming operation. Therefore, the only issue to be decided is whether the taxes resulting from the post-petition sales of such assets can be provided the favorable treatment under 11 U.S.C § 1222(a)(2)(A).

As of this date, only two published cases have interpreted § 1222(a)(2)(A) as it relates to post-petition taxes. In *In re Knudsen*, 356 B.R. 480, 492 (Bankr. N.D. Iowa 2006), the bankruptcy court determined that post-petition taxes resulting from the sale of farm assets used in a farming operation were administrative expenses under 11 U.S.C § 503(b)(1)(B) entitled to priority under 11 U.S.C § 507(a)(2) and, therefore, were the type of taxes that could be discharged as unsecured claims under 11 U.S.C § 1222(a)(2)(A).[1] In *In re Hall*, 376 B.R. 741 (Bankr. D. Ariz. 2007), the Arizona bankruptcy court reached the opposite conclusion. That court determined that such post-petition taxes are not administrative expenses but are the personal liability of the debtors and, therefore, the provisions of 11 U.S.C § 1222(a)(2)(A) do not apply.[2]

Stated simply, the IRS agrees with the court in *Hall* while Debtor agrees with the court in *Knudsen*. Specifically, the IRS asserts that the special provisions of § 1222(a)(2)(A) apply only to "claims entitled to priority under section 507 . . . ." There are two categories of taxes entitled to priority under § 507. The first is under § 507(a)(8), where various types of pre-petition taxes are listed. Post-petition taxes do not appear to fall under such provision. The second category is under § 507(a)(2), as administrative expenses allowed under § 503(b). Section 503(b) provides for administrative expense treatment of any tax "incurred by the estate . . . ." According to the IRS and the court in *Hall*, since a Chapter 12 estate is not a taxable entity, the post-petition taxes arising from the sale of assets used in a farming operation cannot be "incurred by the estate" and are not entitled to administrative priority status. Therefore, the taxes cannot be subject to the special treatment provided in § 1222(a)(2)(A).

The bankruptcy court in *Knudsen*, and Debtor in this case, obviously disagree with the IRS and the decision in *Hall*. Relying on the Eighth Circuit case of *Missouri Dep't of Revenue v. L.J.*

---

[1] *Knudsen* is currently on appeal to the United States District Court for the Northern District of Iowa.

[2] A motion for new trial/reconsideration is currently pending in the bankruptcy court.

*O'Neill Shoe Co. (In re L.J. O'Neill Shoe Co.)*, 64 F.3d 1146, 1152 (8th Cir. 1995) (holding that a tax claim derived from post-petition income in a corporate Chapter 11 case is entitled to administrative expense treatment), the *Knudsen* court determined that even though a Chapter 12 estate is not a separate taxable entity, the plan may provide for payment of taxes arising from income earned after filing the petition and such taxes may be treated as administrative expenses. The *Knudsen* court acknowledged that the statute is ambiguous, but stated "I believe that Congress intended to help farmers reorganize and stay in business by lessening the burden of prepetition and postpetition taxes arising from the sale of assets used in the farmer's farming operation . . . ." *In re Knudsen*, 356 B.R. at 491.

The *Knudsen* court also relied on legislative history with respect to a bill that preceded the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") which contained a proposed amendment to § 1222(a)(2) identical to the change that was ultimately made in BAPCPA. Senator Grassley, who introduced that bill, made the following comments:

> "Safety 2000" [the predecessor bill] also helps farmers to reorganize by keeping the tax collectors at bay. Under current law, farmers often face a crushing tax liability if they need to sell livestock or land in order to reorganize their business affairs. . . . Under the bankruptcy code, the I.R.S. must be paid in full for any tax liabilities generated during a bankruptcy reorganization. If the farmer can't pay the I.R.S. in full, then he can't keep his farm. That isn't sound policy. Why should the I.R.S. be allowed to veto a farmer's reorganization plan? "Safety 2000" takes this power away from the I.R.S. by reducing the priority of taxes during proceedings. This will free up capital for investment in the farm, and help farmers stay in the business of farming.

145 Cong. Rec. S750-02, 1999 WL 20426 (Jan. 20, 1999) (statement of Sen. Grassley on S.260).

Faced with the choice of following the result in *Knudsen* or the result in *Hall*, I feel that *Knudsen* produces the more appropriate result when considering the apparent intent of the statute – that is, to help farmers reorganize. The legislative history quoted above relating to an earlier bill to amend § 1222(a)(2) in an identical manner clearly shows that the language used was intended to allow the debtor to use the amendments to § 1222(a)(2) for taxes generated during the bankruptcy reorganization from the sale of assets used in a farming operation.

Further, even though a Chapter 12 bankruptcy estate is not a separate taxable entity, the estate does exist nonetheless. The estate consists of all property of the debtor on the date of filing, all property that the debtor acquires after commencement of the case, and all earnings from services performed by the debtor after commencement of the case. 11 U.S.C § 1207(a). Debtor filed a motion to sell real estate and personal property free and clear of liens (Fil. #12), which was granted (Fil. #14). The taxes at issue are created by the sale of property of the estate by Debtor. I do not believe that the language of § 503(b)(1)(B) regarding any tax "incurred by the estate" was intended to apply only to those situations where the estate itself is a separate taxable entity. In fact, "incurred by the estate" has been interpreted to simply mean incurred post-petition. *L.J. O'Neill Shoe Co.*, 64

F.3d at 1149 (stating "[t]he bankruptcy court and the district court both held that while the entire corporate tax was 'incurred by the estate' (i.e. – incurred post-petition) . . . ."). Here, there clearly is an estate, the tax is the result of a sale of property of the estate, and Debtor happens to be liable for that tax.

Finally, the language of § 1222(a)(2)(A) indicates that it was intended to apply to taxes arising during the Chapter 12 proceeding. Specifically, it refers to "a claim owed to a governmental unit that *arises* as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation . . . ." (Emphasis added.) To interpret § 1222(a)(2)(A) as being inapplicable to taxes arising post-petition is effectively adding language to the statute that simply is not there. In fact, if it is inapplicable to post-petition taxes as the IRS suggests, the statute becomes meaningless for most debtors as it provides no benefit in a reorganization involving the sale of assets used in a farming operation. Chapter 12 expressly contemplates that a plan may provide for the sale of property of the estate. 11 U.S.C § 1222(b)(8).

Accordingly, I find that the post-petition taxes at issue (arising from the sale of farm assets used in Debtor's farming operation) are the type of taxes subject to treatment under 11 U.S.C § 1222(a)(2)(A) and Debtor's proposed treatment of the Class V claims of the IRS is proper. The objection of the IRS is overruled and the plan should be confirmed.

Separate confirmation order to be entered.

DATED: November 27, 2007.

                                          BY THE COURT:

                                          /s Thomas L. Saladino
                                          United States Bankruptcy Judge

Notice given by the Court to:
    *James R. Nisley
    Henry N. Carriger
    James A. Overcash
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.